**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

_____ District of   Delaware
                             (State)

Case number (*If known*):   _____   Chapter   11

☐ Check if this is an amended filing

## Official Form 201
# Voluntary Petition for Non-Individuals Filing for Bankruptcy    04/16

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | |
|---|---|
| 1. **Debtor's name** | New Athens Generating Company, LLC |
| 2. **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | None |
| 3. **Debtor's federal Employer Identification Number (EIN)** | 65-1230156 |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| 9300 US Highway 9W<br>Number  Street | c/o New MACH Gen, LLC<br>1780 Hughes Landing, Suite 800<br>Number    Street |
| P.O. Box | P.O. Box |
| Athens         NY      12015<br>City          State      ZIP Code | The Woodlands  TX     77380<br>City              State        ZIP Code |
| County<br>Greene | **Location of principal assets, if different from principal place of business**<br><br>Number    Street |
| | P.O. Box |
| | City          State        Zip Code |

5. **Debtor's website (URL)**    N/A

6. **Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
☐ Partnership (excluding LLP)
☐ Other. Specify: _____

01:23180047.1

| Debtor | **New Athens Generating Company, LLC** | Case number *(if known)* _____ |
|---|---|---|
| | Name | |

**7. Describe debtor's business**

A. *Check one:*

- ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
- ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
- ☐ Railroad (as defined in 11 U.S.C. § 101(44))
- ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
- ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
- ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
- ☒ None of the above.

B. *Check all that apply:*

- ☐ Tax-exempt entity (as described in 26 U.S.C. § 501)
- ☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)
- ☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor.
See http://www.uscourts.gov/four-digit-national-association-naics-codes.

<u>2</u>  <u>2</u>  <u>1</u>  <u>1</u>

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

- ☐ Chapter 7
- ☐ Chapter 9
- ☒ Chapter 11. *Check all that apply:*
  - ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,566,050 (amount subject to adjustment on 4/01/19 and every 3 years after that).
  - ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
  - ☒ A plan is being filed with this petition.
  - ☒ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).
  - ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.
  - ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.
- ☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

- ☐ No
- ☒ Yes. District **Delaware** When 3/3/2014 Case number *See* Attached Schedule 1
  MM / DD / YYYY
- District _____ When _____ Case number _____
  MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

- ☐ No
- ☒ Yes. Debtor *See* Attached Schedule 2 Relationship **Affiliate**
- District _____ When _____
- Case number, if known _____ MM / DD / YYYY

01:23180047.1

| Debtor | New Athens Generating Company, LLC | Case number (*if known*) _____ |
|---|---|---|
| | Name | |

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** *(Check all that apply.)*

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____

Number        Street

_____

_____

City                                      State      ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact name _____

Phone _____

---

**Statistical and administrative information**

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

☐ 1-49
☐ 50-99
☐ 100-199
☒ 200-999

☐ 1,000-5,000
☐ 5,001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than 100,000

**15. Estimated assets**

☐ $0-$50,000
☐ $50,001-$100,000
☐ $100,001-$500,000
☐ $500,001-$1 million

☐ $1,000,001-$10 million
☐ $10,000,001-$50 million
☐ $50,000,001-$100 million
☒ $100,000,001-$500 million

☐ $500,000,001-$1 billion
☐ $1,000,000,001-$10 billion
☐ $10,000,000,001-$50 billion
☐ More than $50 billion

01:23180047.1

Debtor    New Athens Generating Company, LLC                      Case number *(if known)* _____
          _____
          Name

**16. Estimated liabilities**

- [ ] $0-$50,000
- [ ] $50,001-$100,000
- [ ] $100,001-$500,000
- [ ] $500,001-$1 million

- [ ] $1,000,001-$10 million
- [ ] $10,000,001-$50 million
- [ ] $50,000,001-$100 million
- [ ] $100,000,001-$500 million

- [x] $500,000,001-$1 billion
- [ ] $1,000,000,001-$10 billion
- [ ] $10,000,000,001-$50 billion
- [ ] More than $50 billion

---

### ■ Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   6 / 11 / 18
              MM / DD / YYYY

X _____          John Chesser
Signature of authorized representative of debtor     Printed name

Title  Chief Financial Officer

**18. Signature of attorney**

X _____          Date   6 / 11 / 18
Signature of attorney for debtor                  MM / DD / YYYY

Edmon L. Morton, Esq.
Printed name
Young Conaway Stargatt & Taylor, LLP
Firm name
Rodney Square, 1000 N. King Street

_____        _____
Number        Street

Wilmington            DE        19801
City                  State     Zip Code

302-571-6600                    emorton@ycst.com
Contact phone                   Email address

3856                            DE
Bar number                      State

---

Official Form 201          Voluntary Petition for Non-Individuals Filing for Bankruptcy          page 4

## **SCHEDULE 1**

### **List of Prior Bankruptcy Cases Filed by the Debtors Within the Last Eight Years**

Each of the affiliated entities listed below has previously filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). MACH Gen, LLC is the only entity that is not a current debtor. The prior chapter 11 plan was confirmed on April 11, 2014.

| Company | Case Number | Date Filed | District | Judge |
|---|---|---|---|---|
| MACH Gen, LLC[1] | 14-10461 | March 3, 2014 | Delaware | Mary F. Walrath |
| MACH Gen GP, LLC | 14-10462 | March 3, 2014 | Delaware | Mary F. Walrath |
| Millennium Power Partners, L.P. | 14-10463 | March 3, 2014 | Delaware | Mary F. Walrath |
| New Athens Generating Company, LLC | 14-10464 | March 3, 2014 | Delaware | Mary F. Walrath |
| New Harquahala Generating Company, LLC | 14-10465 | March 3, 2014 | Delaware | Mary F. Walrath |

---

[1]    The Chapter 11 Cases were jointly administered under Case No. 14-10461.

## SCHEDULE 2

### Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the affiliated entities listed below including the Debtor in this chapter 11 case, filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). A motion will be filed with the Court requesting that the chapter 11 cases of these entities listed below be consolidated for procedural purposes only and jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

| Company | Tax ID # |
|---|---|
| New MACH Gen, LLC | 23-3074920 |
| MACH Gen GP, LLC | 20-1306738 |
| Millennium Power Partners, L.P. | 52-1756688 |
| New Athens Generating Company, LLC | 65-1230156 |
| New Harquahala Generating Company, LLC | 65-1230092 |

01:23179402.2

## WRITTEN CONSENT

## OF THE AUTHORIZING ENTITIES OF

### MACH GEN, LLC,
### NEW MACH GEN, LLC,
### MACH GEN GP, LLC,
### NEW ATHENS GENERATING COMPANY, LLC,
### NEW HARQUAHALA GENERATING COMPANY, LLC

### and

### MILLENNIUM POWER PARTNERS, L.P.

### June 4, 2018

The undersigned, being (i) all of the duly elected members of the Board of Managers (the "Board") of MACH Gen, LLC, a Delaware limited liability company (the "Company"), (ii) the sole member (in such capacity, the "Sole Member (New MACH Gen)") of New MACH Gen, LLC, a Delaware limited liability company ("New MACH Gen"), (iii) the sole member (in such capacity, the "Sole Member (Athens, New Harq and MACH Gen GP)"; together with the Sole Member (New MACH Gen) the "Sole Members") of New Athens Generating Company, LLC, a Delaware limited liability company ("Athens"), New Harquahala Generating Company, LLC, a Delaware limited liability company ("New Harq"), and MACH Gen GP, LLC, a Delaware limited liability company ("MACH Gen GP"), and (iv) the general partner (in such capacity, the "General Partner"; together with the Board and the Sole Members, the "Authorizing Entities", and each, an "Authorizing Entity") of Millennium Power Partners, L.P., a Delaware limited partnership ("MPP"; together with New MACH Gen, Athens, New Harq and MACH Gen GP, each, a "MACH Gen Entity" and collectively, the "MACH Gen Entities"), hereby authorize, approve and adopt, by written consent, the following resolutions on behalf of itself and each of its respective subsidiaries that is a MACH Gen Entity to the same extent and to have the same force and effect as if such resolutions were adopted at a special meeting of each such Authorizing Entity duly called and held for the purpose of adopting such resolutions, and direct that a copy thereof be filed with the minutes of the proceedings of each such Authorizing Entity:

WHEREAS, the undersigned has considered presentations by the management and the financial and legal advisors of the MACH Gen Entities regarding the liabilities and liquidity situation of the MACH Gen Entities, the strategic alternatives available to them, and the effect of the foregoing on the MACH Gen Entities' business, creditors, and other parties in interest;

WHEREAS, the undersigned has had the opportunity to consult with the MACH Gen Entities' management and financial and legal advisors and fully consider each of the strategic alternatives available to the MACH Gen Entities;

WHEREAS, based on its review of all available alternatives and advice provided by such advisors and professionals, each of the undersigned has determined that it is in the best interest of the MACH Gen Entities and their respective stakeholders, for the MACH Gen Entities to take the actions specified in the following resolutions;

**Amended and Restated First Lien Credit and Guaranty Agreement; Emergency Loan Amendment**

WHEREAS, the MACH Gen Entities desire to enter into the Amended and Restated First Lien Credit and Guaranty Agreement, by and among the MACH Gen Entities, the lenders party thereto, the Revolving Issuing Bank (as defined therein), and CLMG Corp. ("CLMG"), in its capacity as administrative agent and collateral agent (the "Prepetition First Lien Credit Agreement"), in order to amend, restate, replace and supersede in its entirety that certain First Lien Credit and Guaranty Agreement, dated as of April 28, 2014, among the MACH Gen Entities, CLMG, in its capacity as administrative agent and collateral agent, and the Lender Parties (as defined therein) party thereto, to effect changes in order to facilitate the Restructuring (as defined below);

WHEREAS, the MACH Gen Entities may desire (but will not be obligated) to enter into the Emergency Loan Amendment to Amended and Restated First Lien Credit and Guaranty Agreement, by and among the MACH Gen Entities, the lenders party thereto, the Revolving Issuing Bank (as defined therein) and CLMG, in its capacity as administrative agent and collateral agent (the "Emergency Loan Amendment" and, together with the Prepetition First Lien Credit Agreement, the "Prepetition Amendments"), in order to provide New MACH Gen with short-term liquidity by way of an emergency term loan in advance of the implementation of the Restructuring;

WHEREAS, each Authorizing Entity deems it advisable and in the best interests of the Company and the MACH Gen Entities for the MACH Gen Entities to enter into the Prepetition Amendments and for each MACH Gen Entity to enter into such agreements and take such other actions as may be necessary, desirable or appropriate the transactions contemplated thereby.

NOW, THEREFORE, IT IS RESOLVED, that each Authorizing Entity, as applicable, hereby authorizes, empowers and directs each of the applicable MACH Gen Entities and each of their respective officers or designees, including, (a) in the case of New MACH Gen, each of Jennifer A. Beck, Frank Kosa, John Chesser, Dale E. Lebsack Jr. and Russell R. Clelland, and any President, Vice President, Chief Financial Officer, Secretary, Assistant Secretary, Treasurer, Assistant Treasurer or authorized signatory thereof, and (b) in the case of MACH Gen GP, Athens, New Harq and MPP, each of Jennifer A. Beck, John Chesser, Dale E. Lebsack Jr. and Russell R. Clelland, and any President, Vice President, Chief Financial Officer, Secretary, Assistant Secretary, Treasurer or authorized signatory thereof  (together, the "Authorized Officers"), each acting alone or in combination with one another, for and on behalf of the applicable MACH Gen Entity, to prepare or cause to be prepared, execute and enter into the Prepetition Amendments, and to prepare and deliver all other related materials, including, without limitation, promissory notes, engagement letters, fee letters, certifications, requests,

mortgages, deeds of trust, pledge agreements, security agreements, financing statements, accession agreements, notices, replacements, confirmations, instruction letters, stock certificates, certificates of membership interest, amendments, modifications, supplements or other agreements, instruments and documents ("Prepetition Amendment Documents"), and any supplements or amendments thereto, as they deem necessary, desirable or appropriate to effect the transactions contemplated by the Prepetition Amendments, such determination to be conclusively evidenced thereby; and that the Prepetition Amendment Documents, in such form and with such changes therein as such Authorized Officer(s) shall approve, are hereby approved and adopted in all respects;

FURTHER RESOLVED, that each Authorizing Entity, as applicable, hereby authorizes, empowers and directs each of the applicable MACH Gen Entities and each of the applicable Authorized Officers, each acting alone or in combination with one another, for and on behalf of the applicable MACH Gen Entity, (i) to authorize and approve the terms of the Prepetition Amendments, (ii) to negotiate, authorize and approve any other documents, agreements or other instruments necessary, desirable or appropriate to effect the transactions contemplated by the Prepetition Amendments, and to execute, deliver and perform the same, (iii) to ratify, reaffirm or acknowledge such guarantees, pledges and grants of security interests, as applicable, given by such MACH Gen Entity under and subject to the terms of each First Lien Collateral Document (as defined in the Prepetition First Lien Credit Agreement) to which it is a party, and to further acknowledge that the obligations of the MACH Gen Entities under the Prepetition Amendments shall be secured by the pledge and security interest granted by such MACH Gen Entity in favor of the First Lien Collateral Agent (as defined in the Prepetition First Lien Credit Agreement) under the First Lien Collateral Documents (as defined in the Prepetition First Lien Credit Agreement), and (iv) to take all such further actions as such Authorized Officer determines to be necessary, desirable or appropriate to effect the transactions contemplated by the Prepetition Amendments, such determination to be conclusively evidenced thereby; and

FURTHER RESOLVED, that each Authorized Officer be, and each of them hereby is, authorized and empowered, on behalf of and in the name of the applicable MACH Gen Entity, to take or cause to be taken any and all such further action and to execute, deliver, perform, verify and/or file, or cause to be executed, delivered, performed, verified and/or filed (or direct others to do so on its behalf as provided herein) all such further documents, agreements, instruments, financing statements, notices, undertakings, certificates and other writings to effectuate the purpose and intent of any and all of the foregoing resolutions.

## Restructuring of Existing First Lien Obligations

WHEREAS, the Company and the MACH Gen Entities desire to enter into the Restructuring Support Agreement, dated on or about June 4, 2018, by and among the MACH Gen Entities, the Company, as a Consenting Equity Holder (as defined therein), the other Consenting Equity Holders party thereto, and the Consenting Lenders (as defined therein) (the "Restructuring Support Agreement") in order to set forth the terms and conditions of the restructuring of the Obligations (as defined in the Prepetition First Lien Credit Agreement) (such

3

restructuring of the Obligations, together with the Harquahala Reorganization (as defined below), the "Restructuring");

WHEREAS, the Company and the MACH Gen Entities desire to implement the Restructuring pursuant to a joint prepackaged plan of reorganization of the MACH Gen Entities (as may be amended, amended and restated, supplemented, or otherwise modified from time to time, the "Plan") that will be filed in jointly-administered voluntary cases commenced by the MACH Gen Entities (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, as part of the Restructuring, upon emerging from chapter 11 of the Bankruptcy Code, New MACH Gen desires to transfer its equity interests in New Harq to Beal Bank USA or its designee, in exchange for the consideration and on the other terms and conditions set forth in the Restructuring Support Agreement and the Plan (the "Harquahala Reorganization");

WHEREAS, in connection with the Restructuring, the Restructuring Support Agreement, the Plan and/or the transactions contemplated thereby (including the Harquahala Reorganization), the Company or the MACH Gen Entities may be required or may deem it necessary or appropriate to execute, enter into, deliver, perform, acknowledge and/or consent to promissory notes, engagement letters, fee letters, certifications, requests, mortgages, deeds of trust, pledge agreements, security agreements, financing statements, notices, replacements, confirmations, instruction letters, stock certificates, certificates of membership interest, amendments, modifications, supplements or other agreements, instruments and documents (including, without limitation, any of the foregoing related or incidental to or contemplated by efforts to obtain the FERC Order (as defined in the Restructuring Support Agreement)) (the foregoing, together with the Restructuring Support Agreement and the Plan, the "Restructuring Documents") or to take such other actions as may be required by the Bankruptcy Court or as may be otherwise necessary or appropriate to consummate the transactions contemplated by the Restructuring Documents or perform under or otherwise give effect to the Restructuring (collectively, the "Restructuring Related Actions"); and

WHEREAS, each Authorizing Entity deems it advisable and in the best interests of the Company and each MACH Gen Entity for the Company and each such MACH Gen Entity to enter into the Restructuring Support Agreement and each other Restructuring Document to which it is to be a party and the transactions contemplated by the Restructuring (including the Harquahala Reorganization) and to perform the Restructuring Related Actions.

NOW, THEREFORE, IT IS RESOLVED, that each Authorizing Entity, as applicable, hereby authorizes, empowers and directs the Company and each of its respective officers or designees, including, each of Jennifer A. Beck, John Chesser, Dale E. Lebsack Jr. and Russell R. Clelland, and any President, Vice President, Chief Financial Officer, Secretary, Assistant Secretary, Treasurer or authorized signatory thereof (together, the "Company Authorized Officers"), and each of the applicable MACH Gen Entities and the Authorized Officer(s), each

4

acting alone or in combination with one another, for and on behalf of the Company and each applicable MACH Gen Entity, as applicable, to (a) execute, deliver and perform under the Restructuring Support Agreement, the Plan and each other Restructuring Document to which such entity is to be a party; and (b) to take or perform any and all Restructuring Related Actions;

FURTHER RESOLVED, that each Restructuring Document to which the Company or any of the MACH Gen Entities is to be a party, in each case, in the form and having the terms and provisions approved by any Company Authorized Officer or any Authorized Officer, as applicable, such approval to be conclusively evidenced by such Company Authorized Officer's or Authorized Officer's, as applicable, execution and delivery thereof, are hereby approved, adopted, ratified and confirmed in all respects;

FURTHER RESOLVED, that each of Company Authorized Officer and each Authorized Officer, for and on behalf of the Company and each MACH Gen Entity, as applicable, is hereby authorized and empowered to negotiate, execute, deliver and perform under any amendments, waivers, modifications, supplements or consents to the Restructuring Documents to which the Company or such MACH Gen Entity is a party, each in such form as may be approved by such Company Authorized Officer or such Authorized Officer, as applicable, (such approval to be conclusively evidenced by the execution and delivery thereof by such Company Authorized Officer or such Authorized Officer, as applicable); and

FURTHER RESOLVED, that each Company Authorized Officer and each Authorized Officer be, and each of them hereby is, authorized and empowered, on behalf of and in the name of the Company and each MACH Gen Entity, as applicable, to take or cause to be taken any and all such further action and to execute, deliver, perform, verify and/or file, or cause to be executed, delivered, performed, verified and/or filed (or direct others to do so on its behalf as provided herein) all such further documents, agreements, instruments, financing statements, notices, undertakings, certificates and other writings to effectuate the purpose and intent of any and all of the foregoing resolutions.

## Chapter 11 Cases

WHEREAS, the undersigned desires that a petition be filed by each of the MACH Gen Entities in the Bankruptcy Court seeking relief under the provisions of chapter 11 of the Bankruptcy Code, in which the authority to operate as a debtor-in-possession will be sought; and

WHEREAS, the undersigned, having considered the financial and operational aspects of the MACH Gen Entities' business and the best course of action to maximize value, deem it advisable and in the best interests of the MACH Gen Entities, their creditors, and other interested parties that a petition be filed by the MACH Gen Entities seeking relief under the provisions of chapter 11 of the Bankruptcy Code;

NOW, THEREFORE, IT IS RESOLVED, that in the judgment of the undersigned, it is desirable and in the best interests of the MACH Gen Entities, their creditors, employees,

stakeholders and other interested parties, that a voluntary petition be filed by each of the MACH Gen Entities seeking relief under the provisions of chapter 11 of the Bankruptcy Code, and the filing of such petition is authorized hereby;

FURTHER RESOLVED, that the Authorized Officers, or any one of them, be, and each hereby is, authorized and empowered, on behalf of and in the name of the MACH Gen Entities, to execute and verify a petition in the name of each of the MACH Gen Entities under chapter 11 of the Bankruptcy Code and to cause the same to be filed in the Bankruptcy Court in such form and at such time as the Authorized Officer(s) executing said petition on behalf of the MACH Gen Entities shall determine;

FURTHER RESOLVED, that the Authorized Officers, or any one of them, be, and each hereby is, authorized and empowered, on behalf of and in the name of the MACH Gen Entities, to execute, deliver, perform, verify and/or file, or cause to be executed, delivered, performed, verified and/or filed (or direct others to do so on their behalf as provided herein) all necessary documents, including, without limitation, all petitions, affidavits, statements, schedules, motions, lists, applications, pleadings, the Plan, the Restructuring Support Agreement, the Restructuring Documents, other papers, guarantees, reaffirmations, additional security documents, control agreements, waivers of or amendments to existing documents, and to negotiate the forms, terms and provisions of, and to execute and deliver any amendments, modifications, waivers or consent to any of the foregoing as may be approved by any Authorized Officer, which amendments, modifications, waivers or consents may provide for consent payments, fees or other amounts payable or other modifications of or relief under such agreements or documents, the purpose of such amendments, modifications, waivers or consents being to facilitate consummation of the transactions contemplated by the foregoing resolutions or for any other purpose, and, in connection with the foregoing, to employ and retain all assistance by legal counsel, investment bankers, accountants, restructuring professionals or other professionals, and to take any and all action which such Authorized Officer or Authorized Officers deem necessary or proper in connection with the Chapter 11 Cases, with a view to the successful prosecution of the Chapter 11 Cases contemplated by the foregoing resolutions and the successful consummation of the transactions contemplated by the foregoing resolutions including, without limitation, any action necessary or proper to maintain the ordinary course operation of the MACH Gen Entities' business;

FURTHER RESOLVED, that Authorized Officers be, and each of them is, authorized to execute, deliver and perform any and all special powers of attorney as such Authorized Officer may deem necessary or desirable to facilitate consummation of the transactions contemplated by the foregoing resolutions, pursuant to which such Authorized Officer will make certain appointments of attorneys to facilitate consummation of the transactions contemplated by the foregoing resolutions as the MACH Gen Entities' true and lawful attorneys and authorize each such attorney to execute and deliver any and all documents of whatsoever nature and description that may be necessary or desirable to facilitate consummation of the transactions contemplated by the foregoing resolutions;

FURTHER RESOLVED, that the Authorized Officers, or any one of them, be, and each hereby is, authorized and empowered, on behalf of and in the name of the MACH Gen Entities, to retain and employ professionals to render services to the MACH Gen Entities in connection with the Chapter 11 Cases and the transactions contemplated by the foregoing resolutions, including, without limitation, the firm Young Conaway Stargatt & Taylor, LLP, to act as chapter 11 counsel; Evercore to act as investment banker; Alvarez & Marsal to act as financial advisor; and Prime Clerk LLC to act as claims and noticing agent and administrative advisor; and in connection herewith each Authorized Officer is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain the services of the foregoing;

FURTHER RESOLVED, that the Authorized Officers, or any one of them, be, and each hereby is, authorized and empowered, on behalf of and in the name of the MACH Gen Entities, to amend, supplement or otherwise modify from time to time the terms of any documents, certificates, instruments, agreements, financing statements, notices, undertakings or other writings referred to in the foregoing resolutions;

FURTHER RESOLVED, that the Authorized Officers be, and each of them hereby is, authorized and empowered, on behalf of and in the name of the MACH Gen Entities, to take or cause to be taken any and all such further action and to execute, deliver, perform, verify and/or file, or cause to be executed, delivered, performed, verified and/or filed (or direct others to do so on its behalf as provided herein) all such further documents, agreements, instruments, financing statements, notices, undertakings, certificates and other writings to effectuate the purpose and intent of any and all of the foregoing resolutions;

FURTHER RESOLVED, that all acts lawfully done or actions lawfully taken by any Authorized Officer to seek relief on behalf of the MACH Gen Entities under chapter 11 of the Bankruptcy Code, or in connection with the Chapter 11 Cases, or any matter related thereto, be, and hereby are, adopted, ratified, confirmed and approved in all respects as the acts and deeds of the MACH Gen Entities in all respects by their respective members or partners;

FURTHER RESOLVED, that all acts lawfully done or actions lawfully taken by any Authorized Officer, or by any employees or agents of the MACH Gen Entities, on or before the date hereof in connections with the transactions contemplated by the foregoing resolutions be, and they hereby are, ratified, confirmed and approved in all respects by the members or partners of the MACH Gen Entities; and

FURTHER RESOLVED, that the omission from these resolutions of any agreement, document or other arrangement contemplated by any of the agreements, instruments, filings or other documents described in the foregoing resolutions or any action to be taken in accordance with any requirement of any of the agreements, instruments, filings or other documents described in the foregoing resolutions shall in no manner derogate from the authority of the Authorized Officers to take all actions necessary, desirable, proper, advisable, or appropriate to consummate,

7

effectuate, carry out or further the transaction contemplated by, and the intent and purposes of, the foregoing resolutions.

## DIP Credit Agreement

WHEREAS, the MACH Gen Entities desire to enter into the Senior Secured Superpriority Debtor-in-Possession Credit and Guaranty Agreement, by and among the MACH Gen Entities, the lenders party thereto and CLMG, in its capacity as administrative agent and collateral agent (the "DIP Credit Agreement"), pursuant to which (a) the lenders party thereto will make available to New MACH Gen a senior secured superpriority debtor-in-possession term loan credit facility in an aggregate principal amount not to exceed $20,000,000 during the pendency of the Chapter 11 Cases and (b) subject in the case of Athens to the Athens Cap Amount (as defined therein), each of MACH Gen GP, Athens, New Harq and MPP agree to guarantee all of the Obligations (as defined therein) of each other Loan Party (as defined therein) under the Loan Documents (as defined therein), each of which is subject to the conditions set forth therein;

WHEREAS, in connection with the DIP Credit Agreement and/or the transactions contemplated thereby, the MACH Gen Entities may be required or may deem it necessary or appropriate to execute, enter into, deliver, perform, acknowledge and/or consent to promissory notes, engagement letters, fee letters, certifications, requests, mortgages, deeds of trust, pledge agreements, security agreements, financing statements, notices, replacements, confirmations, instruction letters, stock certificates, certificates of membership interest, amendments, modifications, supplements or other agreements, instruments and documents (the foregoing, together with the DIP Credit Agreement, the "DIP Credit Documents") or to take such other actions as may be required by the Administrative Agent (as defined in the DIP Credit Agreement) or the Collateral Agent (as defined in the DIP Credit Agreement) or as may be otherwise necessary or appropriate to consummate the transactions contemplated by the DIP Credit Documents or perform under or otherwise give effect to the DIP Credit Documents (collectively, the "DIP Related Actions"); and

WHEREAS, each Authorizing Entity deems it advisable and in the best interests of the Company and each applicable MACH Gen Entity for each such MACH Gen Entity to enter into the DIP Credit Documents to which it is to be a party and the transactions contemplated by the DIP Credit Documents and to perform the DIP Related Actions.

NOW, THEREFORE, IT IS RESOLVED, that each Authorizing Entity, as applicable, hereby authorizes, empowers and directs each of the applicable MACH Gen Entities and the Authorized Officer(s), each acting alone or in combination with one another, for and on behalf of the applicable MACH Gen Entity, (i) to execute, deliver and perform under each DIP Credit Document to which such MACH Gen Entity is to be a party; (ii) to grant, ratify, reaffirm or acknowledge such guarantees, pledges and grants of security interests, as applicable, given by each applicable MACH Gen Entity under and subject to the terms of each Pre-Petition First Lien Collateral Document (as defined in the DIP Credit Agreement) and Security Agreement (as defined in the DIP Credit Agreement) to which it is a party, and to further acknowledge that the

obligations of the MACH Gen Entities under the DIP Credit Agreement shall be secured by the pledge and security interest granted by each applicable MACH Gen Entity, in favor of the Collateral Agent (as defined in the DIP Credit Agreement) under the Pre-Petition First Lien Collateral Documents (as defined in the DIP Credit Agreement); and (iii) to take or perform any and all DIP Related Actions;

FURTHER RESOLVED, that each DIP Credit Document to which any of the MACH Gen Entities is to be a party, in each case, in the form and having the terms and provisions approved by any Authorized Officer, such approval to be conclusively evidenced by such Authorized Officer's execution and delivery thereof, are hereby approved, adopted, ratified and confirmed in all respects;

FURTHER RESOLVED, that each Authorized Officer, for and on behalf of the applicable MACH Gen Entity, is hereby authorized and empowered to negotiate, execute, deliver and perform under any amendments, waivers, modifications, supplements or consents to the DIP Credit Documents to which such MACH Gen Entity is a party, each in such form as may be approved by such Authorized Officer (such approval to be conclusively evidenced by the execution and delivery thereof by such Authorized Officer); and

FURTHER RESOLVED, that each Authorized Officer be, and each of them hereby is, authorized and empowered, on behalf of and in the name of the applicable MACH Gen Entity, to take or cause to be taken any and all such further action and to execute, deliver, perform, verify and/or file, or cause to be executed, delivered, performed, verified and/or filed (or direct others to do so on its behalf as provided herein) all such further documents, agreements, instruments, financing statements, notices, undertakings, certificates and other writings to effectuate the purpose and intent of any and all of the foregoing resolutions.

## Exit First Lien Credit Agreement

WHEREAS, in order to satisfy certain conditions to effectiveness and consummation of the Plan, New MACH Gen, MACH Gen GP, Athens and MPP (collectively, each, an "Exit MACH Gen Entity" and collectively, the "Exit MACH Gen Entities") desire to enter into the Exit First Lien Credit and Guaranty Agreement, by and among the Exit MACH Gen Entities, the lenders party thereto and CLMG, in its capacity as administrative agent and first lien collateral agent (the "Exit First Lien Credit Agreement"), pursuant to which (a) the lenders party thereto will make available to New MACH Gen (i) a term B loan facility in an aggregate principal amount of approximately $448,068,099[1], (ii) a term C loan facility in an aggregate principal amount of approximately $54,460,827[2] and (iii) a revolving credit facility in an aggregate principal amount not to exceed $10,000,000 (clauses (i) through (iii), collectively, the "Exit First Lien Credit Facility") to (A) replace a portion of the Existing Debt (as defined therein) of the Existing Loan Parties (as defined therein) outstanding under the Prepetition First Lien Credit Agreement and repay a portion of the DIP Credit Agreement and (B) pay transaction fees and

---

[1] Based on assumed effective date of the Exit First Lien Credit Agreement of August 31, 2018.
[2] Based on assumed effective date of the Exit First Lien Credit Agreement of August 31, 2018.

expenses and provide funds for ongoing working capital requirements and other general corporate purposes of the Exit MACH Gen Entities (other than Excluded G&A Services (as defined therein)) and (b) subject in the case of Athens to the Athens Cap Amount (as defined therein), each of MACH Gen GP, Athens and MPP agree to guarantee all of the Obligations (as defined therein) of each other Loan Party (as defined therein) under the Loan Documents (as defined therein), each of which is subject to the conditions set forth therein;

WHEREAS, in connection with the Exit First Lien Credit Facility, the Second Lien Credit Facility (as defined below) and the LC Support Agreement (as defined below), the Exit MACH Gen Entities are required to enter into the Collateral Agency and Intercreditor Agreement (the "Intercreditor Agreement"), by and among the Exit MACH Gen Entities, CLMG, as First Lien Administrative Agent, and CLMG, as First Lien Collateral Agent, Talen Investment Corporation, as Second Lien Collateral Agent, Talen Investment Corporation, as Second Lien Administrative Agent, and Talen Energy Supply, LLC, as Second Lien LC Support Provider, which sets forth the respective rights of the First Lien Secured Parties and the Second Lien Secured Parties (each as defined therein), including that (a) New MACH Gen's obligations under the Exit First Lien Credit Facility will be secured on a first priority basis by those security interests given by the Exit MACH Gen Entities in favor of the First Lien Collateral Agent pursuant to the First Lien Collateral Documents (as defined in the Intercreditor Agreement) and (b) New MACH Gen's obligations under the Second Lien Credit Facility will be secured on a second priority basis by those security interests given by the Exit MACH Gen Entities in favor of the Second Lien Collateral Agent pursuant to the Second Lien Collateral Documents (as defined in the Intercreditor Agreement);

WHEREAS, in connection with the Exit First Lien Credit Agreement, the Intercreditor Agreement and/or the transactions contemplated thereby, the Exit MACH Gen Entities may be required or may deem it necessary or appropriate to execute, enter into, deliver, perform, acknowledge and/or consent to promissory notes, engagement letters, fee letters, certifications, requests, mortgages, deeds of trust, pledge agreements, security agreements, security deposit agreements, financing statements, notices, replacements, confirmations, instruction letters, stock certificates, certificates of membership interest, amendments, modifications, supplements or other agreements, instruments and documents (the foregoing, together with the Exit First Lien Credit Agreement and the Intercreditor Agreement, the "Exit First Lien Credit Documents") or to take such other actions as may be required by the First Lien Administrative Agent (as defined in the Intercreditor Agreement) or the First Lien Collateral Agent (as defined in the Intercreditor Agreement) or as may be otherwise necessary or appropriate to consummate the transactions contemplated by the Exit First Lien Credit Documents or perform under or otherwise give effect to the Exit First Lien Credit Documents (collectively, the "Exit First Lien Related Actions"); and

WHEREAS, each Authorizing Entity deems it advisable and in the best interests of the Company and each Exit MACH Gen Entity for each such Exit MACH Gen Entity to enter into the Exit First Lien Credit Documents to which it is to be a party and the transactions contemplated by the Exit First Lien Credit Documents and to perform the Exit First Lien Related Actions.

10

NOW, THEREFORE, IT IS RESOLVED, that each Authorizing Entity, as applicable, hereby authorizes, empowers and directs each of the applicable Exit MACH Gen Entities and the Authorized Officer(s), each acting alone or in combination with one another, for and on behalf of the applicable Exit MACH Gen Entity, (i) to execute, deliver and perform under the Exit First Lien Credit Documents to which such Exit MACH Gen Entity is to be a party; (ii) to grant, ratify, reaffirm or acknowledge such guarantees, pledges and grants of security interests, as applicable, given by each applicable Exit MACH Gen Entity under and subject to the terms of each First Lien Collateral Document (as defined in the Intercreditor Agreement) to which it is a party, and to further acknowledge that New MACH Gen's obligations under the Exit First Lien Credit Agreement shall be secured by the pledge and security interest granted by each applicable Exit MACH Gen Entity in favor of the First Lien Collateral Agent (as defined in the Intercreditor Agreement) under the First Lien Collateral Documents (as defined in the Intercreditor Agreement); and (iii) to take or perform any and all Exit First Lien Related Actions;

FURTHER RESOLVED, that each Exit First Lien Credit Document to which any of the Exit MACH Gen Entities is to be a party, in each case, in the form and having the terms and provisions approved by any Authorized Officer, such approval to be conclusively evidenced by such Authorized Officer's execution and delivery thereof, are hereby approved, adopted, ratified and confirmed in all respects;

FURTHER RESOLVED, that each Authorized Officer, for and on behalf of the applicable Exit MACH Gen Entity, is hereby authorized and empowered to negotiate, execute, deliver and perform under any amendments, waivers, modifications, supplements or consents to the Exit First Lien Credit Documents to which such Exit MACH Gen Entity is a party, each in such form as may be approved by such Authorized Officer (such approval to be conclusively evidenced by the execution and delivery thereof by such Authorized Officer); and

FURTHER RESOLVED, that each Authorized Officer be, and each of them hereby is, authorized and empowered, on behalf of and in the name of the applicable Exit MACH Gen Entity, to take or cause to be taken any and all such further action and to execute, deliver, perform, verify and/or file, or cause to be executed, delivered, performed, verified and/or filed (or direct others to do so on its behalf as provided herein) all such further documents, agreements, instruments, financing statements, notices, undertakings, certificates and other writings to effectuate the purpose and intent of any and all of the foregoing resolutions.

## Second Lien Credit Agreement and LC Support Agreement

WHEREAS, in order to satisfy certain conditions to effectiveness and consummation of the Plan, the Exit MACH Gen Entities desire to enter into the Second Lien Credit and Guaranty Agreement, by and among the Exit MACH Gen Entities, Talen Investment Corporation, as lender, Talen Investment Corporation, as Second Lien Collateral Agent, and Talen Investment Corporation, as Administrative Agent (the "Second Lien Credit Agreement"), pursuant to which (a) the lenders party thereto will make available to New MACH Gen a second lien senior secured credit facility comprised of a loan facility with an aggregate principal amount equal to the greater

11

of $15,000,000 and the aggregate amount required to satisfy the conditions to effectiveness and consummation of the Plan (the "Second Lien Credit Facility") to (i) repay a portion of the Existing Debt (as defined therein) of the Existing Loan Parties (as defined therein) outstanding under the Prepetition First Lien Credit Agreement and the DIP Credit Agreement and (ii) pay transaction fees and expenses and provide funds for ongoing working capital requirements and other general corporate purposes of the Exit MACH Gen Entities and (b) subject in the case of Athens to the Athens Cap Amount (as defined therein), each of MACH Gen GP, Athens and MPP agree to guarantee all of the Obligations (as defined therein) of each other Loan Party (as defined therein) under the Loan Documents (as defined therein), each of which is subject to the conditions set forth therein;

WHEREAS, in order to satisfy certain conditions to effectiveness and consummation of the Plan, the Exit MACH Gen Entities desire to enter into the LC Support Agreement, by and among the Exit MACH Gen Entities, Talen Energy Supply, LLC, as LC Provider, and Talen Investment Corporation, as Second Lien Collateral Agent (the "LC Support Agreement"), pursuant to which the LC Provider will provide (or cause an Affiliate to provide) the Letter of Credit (as defined therein), subject to the conditions set forth therein;

WHEREAS, in connection with the Second Lien Credit Agreement, the LC Support Agreement, the Intercreditor Agreement and/or the transactions contemplated thereby, the Exit MACH Gen Entities may be required or may deem it necessary or appropriate to execute, enter into, deliver, perform, acknowledge and/or consent to promissory notes, engagement letters, fee letters, certifications, requests, mortgages, deeds of trust, pledge agreements, security agreements, financing statements, notices, replacements, confirmations, instruction letters, stock certificates, certificates of membership interest, amendments, modifications, supplements or other agreements, instruments and documents (the foregoing, together with the Second Lien Credit Agreement, the LC Support Agreement and the Intercreditor Agreement, the "Second Lien Credit Documents") or to take such other actions as may be required by the Second Lien Administrative Agent (as defined in the Intercreditor Agreement), the Second Lien Collateral Agent (as defined in the Intercreditor Agreement) or the Second Lien LC Support Provider (as defined in the Intercreditor Agreement) or as may be otherwise necessary or appropriate to consummate the transactions contemplated by the Second Lien Credit Documents or perform under or otherwise give effect to the Second Lien Credit Documents (collectively, the "Second Lien Related Actions"); and

WHEREAS, each Authorizing Entity deems it advisable and in the best interests of the Company and each Exit MACH Gen Entity for each such Exit MACH Gen Entity to enter into the Second Lien Credit Documents to which it is to be a party and the transactions contemplated by the Second Lien Credit Documents and to perform the Second Lien Related Actions.

NOW, THEREFORE, IT IS RESOLVED, that the each Authorizing Entity, as applicable, hereby authorizes, empowers and directs each of the applicable Exit MACH Gen Entities and the Authorized Officer(s), each acting alone or in combination with one another, for and on behalf of the applicable Exit MACH Gen Entity, (i) to execute, deliver and perform under the Second Lien Credit Documents to which such Exit MACH Gen Entity is to be a party; (ii) to grant, ratify,

12

reaffirm or acknowledge such guarantees, pledges and grants of security interests, as applicable, given by each applicable Exit MACH Gen Entity under and subject to the terms of each Second Lien Collateral Document (as defined in the Intercreditor Agreement) to which it is a party, and to further acknowledge that the obligations of the Exit MACH Gen Entities under the Second Lien Credit Agreement and the LC Support Agreement shall be secured by the pledge and security interest granted by each applicable Exit MACH Gen Entity in favor of the Second Lien Collateral Agent (as defined in the Intercreditor Agreement) under the Second Lien Collateral Documents (as defined in the Intercreditor Agreement); and (iii) to take or perform any and all Second Lien Related Actions;

FURTHER RESOLVED, that each Second Lien Credit Document to which any of the Exit MACH Gen Entities is to be a party, in each case, in the form and having the terms and provisions approved by any Authorized Officer, such approval to be conclusively evidenced by such Authorized Officer's execution and delivery thereof, are hereby approved, adopted, ratified and confirmed in all respects;

FURTHER RESOLVED, that each Authorized Officer, for and on behalf of the applicable Exit MACH Gen Entity, is hereby authorized and empowered to negotiate, execute, deliver and perform under any amendments, waivers, modifications, supplements or consents to the Second Lien Credit Documents to which such Exit MACH Gen Entity is a party, each in such form as may be approved by such Authorized Officer (such approval to be conclusively evidenced by the execution and delivery thereof by such Authorized Officer); and

FURTHER RESOLVED, that each Authorized Officer be, and each of them hereby is, authorized and empowered, on behalf of and in the name of the applicable Exit MACH Gen Entity, to take or cause to be taken any and all such further action and to execute, deliver, perform, verify and/or file, or cause to be executed, delivered, performed, verified and/or filed (or direct others to do so on its behalf as provided herein) all such further documents, agreements, instruments, financing statements, notices, undertakings, certificates and other writings to effectuate the purpose and intent of any and all of the foregoing resolutions.

**Ratification; General Authorizations**

RESOLVED, that the managers of the Company and the members or partners of the MACH Gen Entities, as applicable, have received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the organizational documents of the Company and the MACH Gen Entities, as applicable, or hereby waives any right to have received such notice;

FURTHER RESOLVED, that each Company Authorized Officer and/or Authorized Officer, acting alone or in combination with one another, for and on behalf of the Company and each MACH Gen Entity, as applicable, as the sole member, general partner, member, managing member, manager (or similar role) of each direct subsidiary of the Company and each of the MACH Gen Entities (if applicable) is hereby authorized and empowered to engage such advisors, to pay or cause to be paid any and all such fees, expenses, costs, charges, taxes, or other

13

amounts, to do and perform or cause to be done and performed any and all such other acts and things, and to enter into or cause to be entered into any and all such other documents, agreements or other instruments, in each case, as each such Company Authorized Officer or Authorized Officer, as applicable, determines to be necessary, desirable or appropriate to carry out the purposes and intent of the foregoing resolutions, such determination to be conclusively evidenced thereby; and

FURTHER RESOLVED, that all actions taken and all documents, agreements, or other instruments executed or delivered through the date hereof by any Company Authorized Officer and/or Authorized Officer, as applicable, in its capacity as such, in connection with and consistent with the foregoing resolutions are hereby approved, ratified and confirmed as the act and deed of the Company and each MACH Gen Entity, as applicable, in all respects and for all purposes.

[Signature page follows.]

14

**IN WITNESS WHEREOF**, the undersigned have executed this written consent, or a counterpart thereof, all of which counterparts together constitute one and the same instrument and may be delivered in original or in electronic or .pdf format, effective as of the date first written above.

BOARD OF MANAGERS OF MACH GEN, LLC

_____
Dale E. Lebsack Jr.


_____
John Chesser


_____
Russell R. Clelland

*[Signature Page to Written Consent]*

**IN WITNESS WHEREOF**, the undersigned have executed this written consent, or a counterpart thereof, all of which counterparts together constitute one and the same instrument and may be delivered in original or in electronic or .pdf format, effective as of the date first written above.

**BOARD OF MANAGERS OF MACH GEN, LLC**

_____
Dale E. Lebsack Jr.

_____
John Chesser

_____
Russell R. Clelland

**IN WITNESS WHEREOF,** the undersigned have executed this written consent, or a counterpart thereof, all of which counterparts together constitute one and the same instrument and may be delivered in original or in electronic or .pdf format, effective as of the date first written above.

                                        **BOARD OF MANAGERS OF MACH GEN,**
                                        **LLC**


                                        _____
                                             Dale E. Lebsack Jr.


                                        _____
                                             John Chesser


                                        _____
                                             Russell R. Clelland

**MACH GEN, LLC,**
as the sole member of New MACH Gen, LLC

By _____
　　　Name: Dale E. Lebsack Jr.
　　　Title: President

*[Signature Page to Written Consent]*

**NEW MACH GEN, LLC,**
as the sole member of (i) New Athens Generating
Company, LLC, (ii) New Harquahala Generating
Company, LLC, and (iii) MACH Gen GP, LLC

By _____
     Name: John Chesser
     Title: Chief Financial Officer

**MACH GEN GP, LLC,**
as the general partner of Millennium Power Partners,
L.P.

By _____

Name: John Chesser
Title: Chief Financial Officer

Fill in this information to identify the case:

Debtor name  New MACH Gen, LLC

United States Bankruptcy Court for the: _____ District of  DELAWARE _____

Case number (If known): _____

☐ Check if this is an amended filing

## Official Form 204

### Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 20 Largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 Largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | SIEMENS ENERGY INC. ATTN: MARK WEBER REGIONAL MANAGER 4400 ALAFAYA TRAIL MC Q3-030 ORLANDO, FL 32826 | MARK WEBER REGIONAL MANAGER  PHONE - (407) 736-6758 FAX - (407) 736-5015 EMAIL - MARK.WEBER@SIEMENS.COM | Trade Debt | | | | $5,312,671 |
| 2 | TROY INDUSTRIAL SOLUTIONS ATTN: DAVID BARCOMB VICE PRESIDENT 70 COHOES ROAD WATERVLIET, NY 12189 | DAVID BARCOMB VICE PRESIDENT  PHONE – (518) 272-4920 FAX – (518) 272-0531 EMAIL - DBARCOMB@TROYINDUSTRIAL.COM | Trade Debt | | | | $96,196 |
| 3 | NAES ATTN: ROBERT E. FISHMAN CHIEF EXECUTIVE OFFICER 1180 NW MAPLE ST, SUITE 200 ISSAQUAH, WA 98027 | ROBERT E. FISHMAN CHIEF EXECUTIVE OFFICER  PHONE – (425) 961 4700 FAX – (855) 748.3842 EMAIL - SALES@NAES.COM | Trade Debt | | | | $73,645 |
| 4 | INDUSTRIAL STEEL & BOILER SERVICES ATTN: BILL O'NEIL OWNER 939 CHICOPEE STREET SUITE 2 CHICOPEE, MA 01013-2893 | BILL O'NEIL OWNER  PHONE – (413) 532-7788 FAX – (413) 532-0119 EMAIL - INFO@ISBSERVICES.COM | Trade Debt | | | | $70,384 |
| 5 | GRIDFORCE ATTN: CAROLYN J. INGERSOLL PRESIDENT 1331 LAMAR STREET SUITE 560 HOUSTON, TX 77010 | CAROLYN J. INGERSOLL PRESIDENT  PHONE – (713) 332-2902 FAX – (443) 213-3675 EMAIL - CONTACTUS@GRID4CE.NET | Trade Debt | | | | $50,000 |
| 6 | SAFWAY SERVICES, LLC ATTN: JAMES WALTERS CHIEF FINANCIAL OFFICER N19 W24200 RIVERWOOD DRIVE WAUKESHA, WI 53188 | JAMES WALTERS CHIEF FINANCIAL OFFICER  PHONE – (262) 523-6500 FAX – (262) 523-9808 EMAIL - JAMES.WALTERS@SAFWAY.COM | Trade Debt | | | | $38,947 |
| 7 | SLACK CHEMICAL ATTN: ROBERT STURTZ CHIEF EXECUTIVE OFFICER 465 SOUTH CLINTON STREET CARTHAGE, NY 13619 | ROBERT STURTZ CHIEF EXECUTIVE OFFICER  PHONE – (800) 479-0430 FAX – (315) 493-3931 EMAIL - RSTURTZ@SLACKCHEM.COM | Trade Debt | | | | $36,091 |

Debtor name  New MACH Gen, LLC

Case number (if known): _____

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 8 FPI MECHANICAL, INC. ATTN: JOHN ROBERTS CHIEF FINANCIAL OFFICER 11 GREEN MOUNTAIN DR COHOES, NY 12047 | JOHN ROBERTS CHIEF FINANCIAL OFFICER PHONE – (518) 783-7066 FAX – (518) 783-7069 EMAIL – INFO@FPIMECHANICAL.COM | Trade Debt | | | | $35,480 |
| 9 ALLEN PUMP ATTN: GARY BOUDREAU OWNER 25 WILLIAMSVILLE ROAD BARRE, MA 01005 | GARY BOUDREAU OWNER PHONE – (978) 355-2911 FAX – (978) 355-2917 EMAIL – GARYBOUDREAU@CHASGALLEN.COM | Trade Debt | | | | $34,999 |
| 10 INSTRUMENT & VALVE SERVICES ATTN: DAVID N. FARR CHIEF EXECUTIVE OFFICER 8000 WEST FLORISSANT AVENUE ST. LOUIS, MO 63136 | DAVID N. FARR CHIEF EXECUTIVE OFFICER PHONE – (314) 553-2000 FAX – (518) 664-9280 EMAIL – CONTACTUS@EMERSON.COM | Trade Debt | | | | $32,625 |
| 11 ATLANTIC CONTRACTING AND SPECIALTIES ATTN: JOSEPH LEO PRESIDENT 1 HARRISON STREET TROY, NY 12181 | JOSEPH LEO PRESIDENT PHONE – (516) 261-9919 FAX – (516) 261-9925 EMAIL – JLEO@ATLANTICCONTRACTING.COM | Trade Debt | | | | $29,169 |
| 12 ACCESS ANVIL CORP. ATTN: ROSARIO GALLO PRESIDENT P.O. BOX 98 SCHUYLERVILLE, NY 12871 | ROSARIO GALLO PRESIDENT PHONE – (518) 383-0500 FAX – (518) 992-5140 | Trade Debt | | | | $25,357 |
| 13 ATLAS COPCO ATTN: JIM LEVITT PRESIDENT 7 CAMPUS DRIVE SUITE 200 PARSIPPANY, NJ 07054 | JIM LEVITT PRESIDENT PHONE – (973) 397-3432 FAX – (973) 397-3414 EMAIL – JIM.LEVITT@US.ATLASCOPCO.COM | Trade Debt | | | | $22,310 |
| 14 SUEZ WTS SERVICES USA ATTN: MAMTA PATEL CHIEF FINANCIAL OFFICER 4636 SOMERTON ROAD TREVOSE, PA 19053 | MAMTA PATEL CHIEF FINANCIAL OFFICER PHONE – (832) 610-6193 FAX – (201) 767-9300 EMAIL – MAMTA.PATEL@SUEZ.COM | Trade Debt | | | | $21,560 |
| 15 SALT RIVER PROJECT ATTN: MIKE HUMMEL CHIEF EXECUTIVE OFFICER 1500 N. MILL AVE. TEMPE, AZ 85281 | MIKE HUMMEL CHIEF EXECUTIVE OFFICER PHONE – (602) 236-5900 FAX – (602) 236-8640 EMAIL – MIKE.HUMMEL@SRPNET.COM | Trade Debt | | | | $17,861 |
| 16 NORTHEAST VALVE ATTN: DANIEL LECH OWNER 170 LOCKHOUSE RD WESTFIELD, MA 01085 | DANIEL LECH OWNER PHONE – (413) 485-7174 FAX – (413) 485-7180 EMAIL – DLECH@NORTHEASTVALVE.COM | Trade Debt | | | | $16,448 |

Debtor name _New MACH Gen, LLC_

Case number (if known): _____

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 17 | NATIONAL GRID ATTN: JOHN PETTIGREW CHIEF EXECUTIVE OFFICER 300 ERIE BOULEVARD WEST SYRACUSE, NY 13202-4250 | JOHN PETTIGREW CHIEF EXECUTIVE OFFICER PHONE - (800) 867-5222 FAX - (315) 477-7792 EMAIL - JOHN.PETTIGREW@NATIONALGRID.COM | Trade Debt | | | | $14,858 |
| 18 | AIRGAS USA, LLC ATTN: PASCAL VINET CHIEF EXECUTIVE OFFICER 259 NORTH RADNOR-CHESTER ROAD RADNOR, PA 19087-5283 | PASCAL VINET CHIEF EXECUTIVE OFFICER PHONE - (610) 687-5253 FAX - (610) 687-6932 EMAIL - PASCAL.VINET@AIRGAS.COM | Trade Debt | | | | $14,635 |
| 19 | AMERICAN RIVERS ATTN: ROBERT IRVIN CHIEF EXECUTIVE OFFICER 1101 14TH STREET NW WASHINGTON, DC 20005 | ROBERT IRVIN CHIEF EXECUTIVE OFFICER PHONE - (202) 347-7550 FAX - (202) 247-9242 EMAIL - BIRVIN@AMERICANRIVERS.ORG | Trade Debt | | | | $14,282 |
| 20 | WOLBERG ELECTRICAL SUPPLY ATTN: ANDY ROSEN CHIEF FINANCIAL OFFICER 35 INDUSTRIAL PARK ALBANY, NY 12206 | ANDY ROSEN CHIEF FINANCIAL OFFICER PHONE - (518) 489-8451 FAX - (518) 489-4335 EMAIL - APROSEN@WOLBERGINC.COM | Trade Debt | | | | $13,505 |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
In re:                                  :    Chapter 11
                                        :
NEW MACH GEN, LLC, et al.,              :    Case No. 18-[●]
                                        :
                    Debtors.¹           :    (Joint Administration Pending)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**COMBINED CORPORATE OWNERSHIP STATEMENT**
**AND LIST OF EQUITY INTEREST HOLDERS**
**PURSUANT TO FED. R. BANKR. P. 1007(a)(1), 1007(a)(3), and 7007.1**

Pursuant to Rules 1007(a)(1), 1007(a)(3), and 7007.1 of the Federal Rules of Bankruptcy Procedure, New MACH Gen, LLC ("New MACH Gen"), a Delaware corporation, and certain of its affiliates, who are each debtors and debtors in possession in the above-captioned cases (each a "Debtor"), hereby state as follows:

1. New MACH Gen is the direct or indirect parent of each of the other Debtors. MACH Gen, LLC, a non-Debtor, owns 100% of the membership units in New MACH Gen.

2. The Debtors listed below are each 100% owned by New MACH Gen:

   - New Athens Generating Company, LLC

   - New Harquahala Generating Company, LLC

   - MACH Gen GP, LLC ("MACH Gen GP")

3. The Debtor listed below is 99.5% owned by New MACH Gen and 0.5% owned by MACH Gen GP:

   - Millennium Power Partners, L.P.

---

¹ The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: New MACH Gen, LLC (4920), MACH Gen GP, LLC (6738), Millennium Power Partners, L.P. (6688), New Athens Generating Company, LLC (0156), and New Harquahala Generating Company, LLC (0092). The Debtors' principal offices are located at 1780 Hughes Landing, Suite 800, The Woodlands, Texas 7738.

Fill in this information to identify the case:

| | |
|---|---|
| Debtor name | New MACH Gen, LLC, *et al.* |
| United States Bankruptcy Court for the: | _____ District of __Delaware__ |
| | (State) |
| Case number (If known): | _____ |

Official Form 202
**Declaration Under Penalty of Perjury for Non-Individual Debtors**                    12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING – Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐   *Schedule A/B: Assets-Real and Personal Property* (Official Form 206A/B)
☐   *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☐   *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☐   *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☐   *Schedule H: Codebtors* (Official Form 206H)
☐   *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐   Amended *Schedule* _____
☒   *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☒   Other documentation that requires a declaration <u>Consolidated Corporate Ownership Statement and List of Equity Security Holders.</u>

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  6/11/18                    X _____
                                            Signature of individual signing on behalf of debtor

                                             John Chesser
                                            Printed name

                                            Chief Financial Officer
01:23179401.1                               Position or relationship to debtor

Official Form 202        **Declaration Under Penalty of Perjury for Non-Individual Debtors**